## Silver et al. v. Kaiserman et al.

*Frank Fogel,* for plaintiffs; *Harry S. Ambler, Jr.,* for defendants.

STERN, P. J., April 13, 1933.—There are two principal points raised by the plaintiffs in their application for a new trial.

The first is that the trial judge refused to admit evidence as to the existence of an alleged custom of laying radiators flat instead of standing them upright. In the opinion of the court, this contention is without merit, because the ordinary usage or custom of the business is not the test to prove negligence but to disprove it. Without enumerating the many cases that could be referred to on this point, it may be sufficient to cite Cunningham v. Fort Pitt Bridge Works, 197 Pa. 625, and Peterson v. Feltenberger, 102 Pa. Superior Ct. 6.

The second contention of the plaintiffs is that the trial judge erred in submitting to the jury a consideration of the time element as bearing upon the question of the liability of the defendant Edward R. Sabin Company. This question arises from the fact that the accident happened on the eighteenth day after the radiator had been delivered, and the trial judge told the jury that the duty of the defendant was to place the radiator in a reasonably safe position for the space of time that could reasonably be expected to ensue until the radiator was installed. It is the contention of the plaintiffs that, if the defendant placed the radiator in an unsafe position, the liability of the defendant continued indefinitely, so that the defendant would be responsible even though the radiator might fall many years after the delivery was made. They argue that, if there was negligence in the original placing of the radiator in the yard, that negligence continued as a potential source of liability unless and until some inter-

vening negligence should supersede it, and that in this case the mere inaction of the landlord and the tenant of the premises was not a superseding or intervening negligence which would relieve the original negligence of the defendant by reason of the manner in which the radiator was placed.

The court is of opinion that this contention of the plaintiffs, while based upon a correct principle of law, overlooks salient features of the case which make this principle inapplicable, or at least subject to other considerations which, from a legal point of view, dominate the situation. In the first place, the reasoning of the plaintiffs would seem to be fallacious in assuming that the setting up of the radiator in the yard must be determined to be negligent or not negligent without any consideration whatever of the period of time during which, in the contemplation of the parties, it was reasonably to be expected that the safety of the radiator was to be assured. What would be a proper and safe construction for a day might not be at all safe for a month or a year. The time element is vital in determining the degree of safety reasonably to be required. One would not be expected, for example, to build a house which was only to remain standing for a week in the same way that he would be called upon to erect a building that was to endure indefinitely. Temporary construction and arrangements during the course of building are quite different from those which are intended for permanent use. In the present case, it was testified that the radiator was subjected to vibration by automobiles and trucks which constantly passed close to it, and everybody knows that any article or apparatus placed in the open is exposed to many influences which cumulatively make for its instability. Therefore, if the parties had contemplated that the radiator was to be placed in a manner or position in which it would be safe for all time, the defendant company might properly have been called upon to moor or clamp it with steel or concrete to the ground or the building, whereas if, as the evidence justified the jury in concluding, the radiator was being placed merely for a few days until the defendant or some other company should install it, the degree of protection and the stability required would be entirely different. This aspect of the case is entirely ignored by the plaintiffs in their arguments.

There is, however, a more important feature of the situation to be borne in mind. The ordinary principle of law is that when a man is employed to do a particular job, and he turns the completed work over to the person with whom he was under contract to perform it, he thereafter is not liable to a third person who may subsequently be injured as the result of a defect in the manner in which the work was done. Whatever liability exists thereafter is on the part of the owner or contractor for whom the work was performed. This doctrine arises from pragmatic considerations. Modern life is extremely intricate, and, generally speaking, it would not be practical to impose liability upon an original builder or manufacturer whose work passes through the hands of successive persons who in turn use it in relation with third persons under varying degrees of social and legal responsibilities. There are of course qualifications of this general doctrine. A person who manufactures an article with a concealed or inherent defect may remain liable to the ultimate consumer, because it would obviously be unjust to fasten responsibility upon the intermediate dealer who has neither the opportunity nor the means to make the kind of inspection of the article which would reveal such a defect.

With these general principles in mind, how does the present case stand? It is not one where there was anything defective in the radiator, inherent or otherwise. According to the finding of the jury, all that the defendant company was called upon to do with the radiator was to deliver it. The defendant contended, and with some basis of justification, that as soon as the delivery was completed,

therefore, its responsibility was at an end and that the landlord or the tenant then and there, if not actually at least constructively, assumed dominion over the radiator with the accompanying responsibility in regard to it so far as concerned third persons who might thereafter come into relationship with it. The trial judge, however, did not go that far. He took the position that the agreement between the defendant on the one side and the purchaser of the radiator on the other was this, namely, that the purchaser in effect said to the defendant: "We wish to have a radiator installed. This installation will be made in ordinary due course, that is to say, within a few days (or whatever other period may factually be determined to be a customary time). We want you to place the radiator temporarily in our yard pending such installation, and to put it so that it will be safe during such period." If, at the end of the period when it was contemplated that the radiator would be installed, it was not in fact installed, the purchaser thereupon in the eye of the law assumed absolute dominion over it and responsibility for it, for then and there the kind of delivery which had been bargained for was ended. At that moment the purchaser became the pro-' prietor or custodian of the radiator for his own general purposes, and if, instead of having it installed, he chose to keep it stored for an indefinite period in the yard, he became the party responsible for the safety of those who might come in contact with it. The defendant had done all that it had been called upon to do, namely, to deliver it in such manner that it would maintain itself safely for the period impliedly understood and agreed to by the parties.

It is on this point that the case is to be distinguished from, or rather brought into accord with, the general principle insisted upon by the plaintiffs: "One who supplies a thing for such use by others that it is obvious to him that any defect will be likely to result in injury to those so using it is liable to any person who, using it properly for the purpose for which it is supplied, and without notice or warning of its defective condition, is injured thereby:" 45 C. J. 886, sec. 324. Here the proposed contemplated "use" of the radiator was not the keeping of it indefinitely on storage in the yard as placed there by the defendant, but, as far as the defendant contractually engaged, the mere temporary deposit of it in the yard, and it was only as to that limited "use" that responsibility should, under the cited principle, attach to the defendant. For this reason, it does not seem necessary to discuss the numerous cases cited by both sides in regard to responsibility for negligence after an article has passed into the hands of a vendee or some intermediate person. The real point in the present case is that, even though it be admitted that the delivery did not terminate with the actual deposit of the radiator in the yard, the responsibility of the defendant was properly limited to the "use" to which, so far as the defendant was concerned, the radiator was to be put, and that "use" consisted only of its maintenance in the yard for a few days pending a different and ultimate use to which entirely different principles of responsibility would properly apply. By way of analogy, if an owner of property wished to have a reviewing stand erected on his pavement from which he and his friends desired merely to inspect a parade, and he employed a contractor whom he so informed and who, with that situation in contemplation, constructed a stand designed to meet the particular temporary purpose stipulated, but afterwards the owner decided to let the stand remain for further use over an indefinite period of time, and it ultimately collapsed, injuring an occupant, surely the responsibility for the accident should not be visited upon the contractor. When the owner decided to maintain the stand beyond the period for which the contractor had placed it there, he should be considered as having assumed thenceforth the responsibilities arising out of its continued maintenance.

For the reasons thus indicated, while the court has fully considered all the authorities referred to in the admirable briefs submitted by counsel for the plaintiffs, it is of opinion that the instructions given by the trial judge to the jury were in accord with the principles of law applicable to the situation, and that the conclusion reached by the jury was supported by the evidence and the justice of the case. Therefore the plaintiffs' rules for new trial are discharged.